David W. Quinto (Bar No. 106232)
dquinto@onellp.com
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

*Attorneys for Plaintiffs and Cross-Defendants,*
STEMCELL Technologies Canada Inc, STEMCELL Technologies Inc., and Canventa Life Sciences, Inc. and Counter-Defendant Allen C. Eaves

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STEMCELL TECHNOLOGIES CANADA INC., f/k/a STEMCELL TECHNOLOGIES INC., a Canadian corporation; STEMCELL TECHNOLOGIES INC., a Nevada corporation; and CANVENTA LIFE SCIENCES, INC., a Delaware corporation,

Plaintiffs,

v.

STEMEXPRESS, LLC, a California limited liability corporation; CATHERINE S. DYER a/k/a CATE DYER, an individual; and DOES 1-10, inclusive,

Defendants.

STEMCELL EXPRESS, LLC, A California limited liability corporation;

Counter-Plaintiff

v.

STEMCELL TECHNOLOGIES CANADA INC., et al.

Cross- and Counter-Defendants.

Case No. 3:21-cv-01594-VC
Hon. Vince Chhabria

**NOTICE OF MOTION AND MOTION TO STRIKE STEMEXPRESS'S DESIGNATION OF TRADE SECRETS PURSUANT TO FED. R. CIV. P. 12(f);**

**[DECLARATIONS OF DAVID W QUINTO, DEBRA SAUVE, AND PROPOSED ORDER FILED CONCURRENTLY HEREWITHIN]**

Date: March 3, 2022
Time: 10:00 a.m.
Location: Courtroom 4, 17th Floor

**TO ALL PARTIES, COUNSEL AND THE COURT:**

**PLEASE TAKE NOTICE** that on Thursday, March 3, 2022, at 10:00 a.m., in the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 4, 17th Floor, San Francisco, CA 94102, before the Honorable Vince Chhabria, Plaintiffs and Cross-Defendants STEMCELL Technologies Canada Inc., STEMCELL Technologies Inc., and Canventa Life Sciences, Inc. and Counter-Defendant Allen C. Eaves will move this Court for an Order Striking StemExpress LLC's Designation of Trade Secrets pursuant to Fed. R. Civ. P. 12(f) because it fails to identify StemExpress's allegedly misappropriated trade secrets with reasonable particularity as is required by California Civil Procedure Code section 2010.210 before a trade secret claimant may conduct discovery related to a trade secret misappropriation claim. Appearances at the hearing will be conducted by Zoom.

This Motion to Strike is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of David W. Quinto dated January 26, 2022, and Exhibit A thereto, the Declaration of Debra Sauvé dated January 26, 2022, and such other and further argument and authorities as may be presented at or before the hearing of the motion, and the [Proposed] Order submitted herewith.

Dated: January 26, 2022 **ONE LLP**

By: /s/ David W. Quinto
David W. Quinto
Joanna Ardalan

*Attorneys for Plaintiffs and Cross-Defendants,*
STEMCELL Technologies Canada Inc.,
STEMCELL Technologies Inc., and
Canventa Life Sciences, Inc., and
Counter-Defendant Allen C. Eaves

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. THE COURT MAY STRIKE A DEFICIENT TRADE SECRET IDENTIFICATION .......... 2

III. STEMEXPRESS HAS IDENTIFIED GENERAL CATEGORIES OF INFORMATION AS ITS TRADE SECRETS WITHOUT ATTEMPTING TO SAY WHAT THE ACTUAL TRADE SECRETS ARE .......... 3

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Cases**

*Advanced Modular Sputtering v. Superior Court*,
132 Cal.App.4th 826, 836 (Cal. Ct. App. 2005) .......... 9

*Agency Solutions.com, LLC v. TriZetto Grp.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011) .......... 9

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*
226 Cal.App.4th 26 (2014) .......... 9

*Aqua-Long Am. Inc. v. Am. Underwater Prods., Inc.*,
709 F. Supp. 2d 773 (N.D. Cal. 2010) .......... 10

*Brescia v. Angelin*,
172 Cal. App. 4th 133 (2009) .......... 8

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,
2021 U.S. Dist. LEXIS 216806 (N.D. Cal. Nov. 9, 2021) .......... 10

*Cisco Sys. v. Chung*,
2020 U.S. Dist. LEXIS 240028 (N.D. Cal. December 21, 2020) .......... 3

*Computer Econ., Inc. v. Gartner Grp.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999) .......... 8

*Diodes, Inc. v. Franzen*,
260 Cal. App. 2d 244 (1968) .......... 7, 8

*Excelligence Learning Corp. v. Oriental Trading Co.*,
2004 U.S. Dist. LEXIS 28125 (N.D. Cal. 2004) .......... 10

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) .......... 2, 3

*Farhang v. Indian Inst. of Tech., Kharagpur*,
2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) .......... 10

*FormFactor, Inc. v. Micro-Probe, Inc.*,
2012 U.S. Dist. LEXIS 79359 (N.D. Cal. June 7, 2012) .......... 9

*Imax Corp. v. Cinema Technologies, Inc.*,
152 F.3d 1161 (9th Cir. 1998) .......... 10, 11

*KEMA, Inc. v. Koperwhats*, 2010 U.S. Dist. LEXIS 90790 (N.D. Cal. Sept. 1, 2010)....................3

*Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107 (N.D. Cal. 2016)....................9, 10

*Neilson v. Union Bank of Cal. N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003)....................3

*Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042 (N.D. Cal. 2004)....................10

*Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333 (2009), *rev. den.* (Feb. 18, 2010)....................8

*Phillips N. Am. LLC v. Advanced Imaging Servs.*, 2021 U.S. Dist. LEXIS 148163 (E.D. Cal. Aug. 6, 2021)....................8, 11

*Phoenix Techs., Ltd. v. Device VM, Inc.*, 2010 U.S. Dist. LEXIS 24884 (N.D. Cal. Mar. 17, 2010)....................10

*Pixion, Inc. v. PlaceWare, Inc.*, 421 F. Supp. 2d 1233 (N.D. Cal. 2005)....................10

*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983)....................3

*Vermont Microsys., Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996)....................9

**Statutes**

California Civil Procedure Code section 2019.210....................4, 8, 12

CALIFORNIA'S TRADE SECRETS LAW....................9

Uniform Trade Secrets Act....................7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(f)....................2

Federal Rule of Evidence 201(b) and (c)(2)....................4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court dismissed StemExpress's initial cross- and counter-claims in their entirety, including four on the basis that they failed to satisfy the minimal pleading requirement to allege facts as opposed to vague conclusions. The Court granted leave to amend those four claims, but in doing so directed StemExpress to provide greater specificity in re-alleging them.

On December 15, 2021, the Court ordered that StemExpress identify its claimed trade secrets with the specificity required by California law by January 6, 2022. StemExpress's identification is attached as Exhibit A to the Declaration of David W. Quinto filed concurrently herewith. As shown in the accompanying Declaration of Debra Sauvé, everything StemExpress identifies as its trade secrets is commonplace in the industry. The identification does not come close to complying with the Court's order. Accordingly, Cross- and Counter-Defendants now move to strike Counter-Plaintiff's Designation of Trade Secrets.

StemExpress's Designation of Trade Secrets ("Designation") refers to very broad categories of information. It is impossible to discern from the Designation what is claimed as trade secret and what is common knowledge, because the categories of information that Counter-Plaintiff alleges are protectable are kept by every single one of its competitors. Furthermore, Counter-Plaintiff has failed to identify the protectable information that has allegedly been used or disclosed by Cross- and Counter-Defendants.

## II. THE COURT MAY STRIKE A DEFICIENT TRADE SECRET IDENTIFICATION

A Court is empowered to strike "from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" if it has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993),

*rev'd on other grounds*, 510 U.S. 517 (1994). A court may also strike matters to reduce trial complication. *Fantasy*, 984 F.2d at 1527. The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Ultimately, whether to grant a motion to strike "lies within the sound discretion of the district court." *Neilson v. Union Bank of Cal. N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). A motion to strike is the proper procedural vehicle to challenge and cure an overreach in an important document meant to guide a litigation, such as a Designation of Trade Secrets. *Cisco Sys. v. Chung*, 2020 U.S. Dist. LEXIS 240028, at *10 (N.D. Cal. December 21, 2020).

## III. STEMEXPRESS HAS IDENTIFIED GENERAL CATEGORIES OF INFORMATION AS ITS TRADE SECRETS WITHOUT ATTEMPTING TO SAY WHAT THE ACTUAL TRADE SECRETS ARE

On January 5, 2022, StemExpress provided a list of commonplace categories of information that it claims are its trade secrets. In doing so, StemExpress has identified all the categories it keeps without regard to whether STEMCELL even supplies products that necessitate that it keep certain types of information. The list is so all encompassing that it includes as its 11th claimed trade secret forms that are available to everyone who donates blood specimens and, hence, cannot be trade secret as a matter of law.[1]

It includes as its 7th claimed trade secret batch records for "custom" biospecimen sample products when "custom" biospecimen products are those made to a customer's specifications. When that occurs, the customer, not STEMCELL or other supplier, determines what is included in the batch records. Declaration of

[1] *See KEMA, Inc. v. Koperwhats,* 2010 U.S. Dist. LEXIS 90790, at *13 (N.D. Cal. Sept. 1, 2010) (quoting *In re Providian Credit Card Cases,* 96 Cal. App. 4th 292, 304 (2002)).

Debra Sauvé dated January 26, 2022 ("Sauvé Dec."), ¶ 25.[2]

The 6th claimed trade secret is described as batch records for bone marrow products but STEMCELL provided StemExpress with the specifications it requires of the manufacture of bone marrow products and manufactures cell isolation kits used by StemExpress to process and manufacture many bone marrow products, including the step-by-step instructions needed to do so. *Id.*, ¶ 24.

The 5th claimed trade secret is batch records for cord blood products but, again, STEMCELL provided StemExpress with the specifications it requires for the manufacture of cord blood products, together with step-by-step instructions to process cord blood, isolate cells, and analyze cord blood products. *Id.*, ¶ 23.

Remarkably, StemExpress has identified as its fourth allegedly misappropriated trade secret batch records for mobilized leukopak products with step-by-step instructions for processing the biospecimen samples when neither STEMCELL nor the particular alleged thief, Canventa Life Sciences, even makes mobilized leukopak products. *Id.*, ¶ 22.

The 12 categories of information identified by StemExpress as its trade secrets merely describe types of information widely kept by companies that collect and provide human primary cell collections for research purposes, of which there are many dozens. (Many hospitals also collect and keep such information.) *Id.*, ¶ 7. The list provides no guidance concerning what the claimed secrets in each category are and does not allow the parties or the Court to distinguish them from matters that are generally known in the industry or known to persons skilled in the trade, as is required by California Civil Procedure Code section 2019.210. Importantly, there is nothing confidential about the categories of information StemExpress keeps. The

---

[2] Cross- and Counter-Defendants respectfully request that the Court judicially notice the existence of the Internet websites cited in the accompanying Declaration of Debra Sauvé and the existence of the information contained therein pursuant to Federal Rule of Evidence 201(b) and (c)(2). In doing so, Cross- and Counter-Defendants are not asking the Court to accept any statements or information available on those websites as accurate or true, but merely that the information available thereon is publicly accessible.

methods, techniques, and processes referred to by StemExpress as its trade secrets are widely kept within the industry. *Id.*, ¶¶ 11-30. StemExpress has not offered any clue concerning what it does differently, and better, than its competitors and that is not widely known or found in publicly available literature.

For the Court's convenience, StemExpress's full trade secret identification is set forth below:

> Pursuant to Court's Minute Order dated December 15, 2021, Defendant/Counter-Plaintiff StemExpress, LLC ("StemExpress") designates the following information as trade secrets in the above-captioned action, as existing during the pendency of the Supply Agreement between StemExpress and Counter-Defendant Stemcell Technologies, Inc.:
>
> 1. StemExpress' method, technique, and process for screening potential biospecimen donors for inclusion within its donor pool based on considerations of demographic and health information of the donor and StemExpress' eligibility, exclusion and deferral criteria.
> 2. StemExpress' method, technique, and process for scheduling donors for collections of biospecimen samples, including factors of frequency and types of collections to maximize cell viability and optimize collection process and capacity.
> 3. StemExpress' batch records for leukopak products under the Supply Agreement, which contain the proprietary step-by-step instructions for processing the biospecimen samples and manufacturing to specification, as developed by StemExpress and improved and modified over time to improve efficiency and viability.
> 4. StemExpress' batch records for mobilized leukopak products under the Supply Agreement, which contain the proprietary step-by-step instructions for processing the biospecimen samples and

manufacturing to specification, as developed by StemExpress and improved and modified over time to improve efficiency and viability.

5. StemExpress' batch records for cord blood products under the Supply Agreement, which contain the proprietary step-by-step instructions for processing the biospecimen samples and manufacturing to specification, as developed by StemExpress and improved and modified over time to improve efficiency and viability.

6. StemExpress' batch records for bone marrow products under the Supply Agreement, which contain the proprietary step-by-step instructions for processing the biospecimen samples and manufacturing to specification, as developed by StemExpress and improved and modified over time to improve efficiency and viability.

7. StemExpress' batch records for custom biospecimen sample products under the Supply Agreement, which contain the proprietary step-by-step instructions for processing the biospecimen samples and manufacturing to specification, as developed by StemExpress and improved and modified over time to improve efficiency and viability.

8. StemExpress' method and technique of designing and configuring its biospecimen collection center and laboratory, including type, arrangement, and quantity of equipment used and methods for transferring, preserving, storing and handling of biospecimen from collection to manufacturing in the laboratory.

9. StemExpress' method, technique, and process for freezing products to maximize efficiency and cost effectiveness, including specific selection and use of equipment, as developed by StemExpress and improved and modified over time.

10. StemExpress' method, technique, and process for manufacturing off-catalogue custom isolated biospecimen products, requiring

specialized vial sizes, anticoagulant usage, and custom manufactured collection supplies.

11. StemExpress' IRB-approved donor consent template forms.

12. StemExpress' process for producing a Certificate of Analysis for its products to ensure accuracy and quality control needs are satisfied.[3]

## IV. CALIFORNIA'S UTSA REQUIRES THAT A TRADE SECRET CLAIMANT IDENTIFY ITS ALLEGEDLY MISAPPROPRIATED TRADE SECRETS WITH GREAT SPECIFICITY

In enacting California's version of the Uniform Trade Secrets Act ("UTSA"), the legislature was guided by the decision in *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968), which required that a trade secret claimant identify all allegedly misappropriated trade secrets with "reasonable particularity sufficient to separate it from . . . the knowledge of persons skilled in the trade" at the outset of a litigation. *Diodes* declared:

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery that may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies. If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process, without revealing the details of it, to give both

[3] A true and correct copy of StemExpress's trade secret identification is attached to the accompanying Declaration of David W. Quinto as Exhibit A.

> the court and the defendant reasonable notice of the issues, which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of discovery.

When California enacted its version of the UTSA, *Diodes* found its expression in Cal. Civ. Proc. Code § 2019.210, which states:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act [citation omitted], before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

A number of policy reasons undergird the early disclosure requirement: (1) it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints; (2) it prevents plaintiffs from conducting "fishing expeditions" and using discovery as a means to obtain a defendant's trade secrets; (3) it assists the court in framing the appropriate scope of discovery; and (4) it enables defendants to form complete and well-reasoned defenses and ensures that defendants need not wait until the eve of trial to defend against trade claims effectively. *See Phillips N. Am. LLC v. Advanced Imaging Servs*., 2021 U.S. Dist. LEXIS 148163, at *16 (E.D. Cal. Aug. 6, 2021); *Computer Econ., Inc. v. Gartner Grp*., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999); *Perlan Therapeutics, Inc. v. Super. Ct*., 178 Cal. App. 4th 1333, 1343 (2009), *rev. den.* (Feb. 18, 2010); *Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009).

Section 2019.210's identification requirement is easily satisfied when identifying unique things that indisputably belong to the plaintiff, such as its customer list or strategic plan. In contrast, a more specific identification is required when ownership of the claimed trade secrets is not obvious, as when they "consist of incremental variations on, or advances in, the state of the art in a highly specialized

technical field." *Advanced Modular Sputtering*, 132 Cal. App. 4th at 836. In such instances, a "more exacting level of particularity may be required to distinguish the alleged trade secrets in matters already known to persons skilled in that field." *Id*.

That is not an easy burden to satisfy. "[I]n some cases, especially those involving technical or scientific information such as this one, plaintiffs have supported their trade secret disclosures with declarations by expert witnesses which attempt to distinguish the alleged trade secrets from information already known in the field." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113 (N.D. Cal. 2016).

A trade secret plaintiff must identify "each particular trade secret," rather than "just a file that might contain" the trade secret, and must describe the subject matter of each trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc*. 226 Cal. App. 4th 26, 43 (2014); *see also FormFactor, Inc. v. Micro-Probe, Inc.*, 2012 U.S. Dist. LEXIS 79359, at *17-18 (N.D. Cal. June 7, 2012); *Agency Solutions.com, LLC v. TriZetto Grp.*, 819 F. Supp. 2d 1001, 1017-18 (E.D. Cal. 2011).

As shown above, StemExpress has not identified each particular trade secret with with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit STEMCELL and the Court to ascertain at least the boundaries within which each secret lies.

## V. THE IDENTIFICATION REQUIREMENT IS A SUBSTANTIVE PORTION OF CALIFORNIA'S TRADE SECRETS LAW

Although the California requirement to identify trade secrets with particularity before commencing discovery related thereto is codified in its Code of Civil Procedure, federal courts apply it in cases arising under the UTSA. They view it as a substantive requirement of California's UTSA and sometimes reason that to do otherwise would encourage forum shopping. *See, e.g.*, *Vermont Microsys., Inc. v.*

*Autodesk, Inc*., 88 F.3d 142, 147 (2d Cir. 1996) ("To assert a cause of action for trade secret misappropriation under California law, VMI was required to 'identify the trade secret with reasonable particularity.'"); *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.,* 2021 U.S. Dist. LEXIS 216806, at *5-8 (N.D. Cal. Nov. 9, 2021); *Loop AI Labs*, 195 F. Supp. 3d at 1110-12); *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 U.S. Dist. LEXIS 53975, at *41-42 (N.D. Cal. June 1, 2010); *Aqua-Long Am. Inc. v. Am. Underwater Prods., Inc*., 709 F. Supp. 2d 773, 787 (N.D. Cal. 2010); *Phoenix Techs., Ltd. v. Device VM, Inc*., 2010 U.S. Dist. LEXIS 24884, at *7 (N.D. Cal. Mar. 17, 2010); *Pixion, Inc. v. PlaceWare, Inc*., 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005); *Neothermia Corp. v. Rubicor Med., Inc*., 345 F. Supp. 2d 1042, 1043 (N.D. Cal. 2004); *Excelligence Learning Corp. v. Oriental Trading Co*., 2004 U.S. Dist. LEXIS 28125 (N.D. Cal. 2004).

In *Imax Corp. v. Cinema Technologies, Inc*., 152 F.3d 1161 (9th Cir. 1998) (affirming district court's dismissal of trade secret misappropriation claim), the 9th Circuit discussed the level of specificity that a trade secret claimant must provide. At issue was Imax's attempt to protect its interests in large format motion picture projectors. Imax claimed as its trade secrets the designs of its cam unit and film arms, "including every dimension and tolerance that defines or reflects that design." The district court found those descriptions were fatally vague because Imax had not identified "exactly what dimensions and tolerances it claimed as trade secrets." *Id.* at 1167.

The 9th Circuit began its analysis by quoting *Universal Analytics v. MacNeal-Schwendler Corp.,* 707 F. Supp 1170, 1177 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990), for the proposition that a trade secret plaintiff "'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Imax* at 1164-64. (Emphasis supplied by 9th Circuit.) It then agreed with the district court, holding that "reasonable specificity could only be

achieved by identifying the precise numerical dimensions and tolerances as trade secrets." *Id.* at 1167. A specific identification of claimed trade secrets is required when ownership of the claimed trade secrets is not obvious, as when they "consist of incremental variations on, or advances in, the state of the art in a highly specialized technical field." *Phillips N. Am. LLC v. Advanced Imaging Servs.*, 2021 U.S. Dist. LEXIS 148163, at *16 (E.D. Cal. Aug. 6, 2021). In such instances, a "more exacting level of particularity may be required to distinguish the alleged trade secrets in matters already known to persons skilled in that field." *Id.*

Counter-Plaintiff's Designation is insufficient to meet the requirement to identify trade secrets with reasonable particularity, as required by California law. The Designation, like Counter-Plaintiff's Counterclaims and First Amended Counterclaims, lists as trade secrets broad categories without identifying the trade secrets. For instance, the first two claimed trade secrets are "StemExpress' method, technique and process for screening potential biospecimen donors for inclusion within its donor pool" and its "method, technique, and process for scheduling donors for collections of biospecimen samples." The next six claimed trade secrets are identified as "proprietary step-by-step instructions" for processing sample and creating batch records for various products. The remaining claimed trade secrets are StemExpress's "method and technique of designing and configuring its biospecimen collection center and laboratory," its "method, technique, and process for freezing products," its "method, technique, and process for manufacturing off-catalogue custom isolated biospecimen products," its "IRB-approved donor consent template forms," and its "process for producing a Certificate of Analysis for its products to ensure accuracy and quality control needs are satisfied."

The Designation provides no guidance as to what Counter-Plaintiff's trade secrets actually are. StemExpress has identified as trade secrets functions that all its competitors perform. StemExpress's identification provides no guidance in separating its claimed trade secrets from "matters of general knowledge in the trade

or of special knowledge of those persons . . . skilled in the trade." Therefore, Cross- and Counter-Defendants respectfully request that this Court strike StemExpress's Designation.

## IV. CONCLUSION

For the reasons explained above, Cross- and Counter-Defendants respectfully request that the Court grant their Motion to Strike StemExpress's Designation of Trade Secrets as non-compliant with Cal. Civ. Proc. Code § 2019.210 and dismiss the counter- and cross- claims to the extent they are based on alleged trade secret misappropriation.

Dated: January 26, 2022 **ONE LLP**

By: */s/ David W. Quinto*
David W. Quinto
Joanna Ardalan

*Attorneys for Plaintiffs and Cross-Defendants,*
STEMCELL Technologies Canada Inc.,
STEMCELL Technologies Inc., and
Canventa Life Sciences, Inc., and
Counter-Defendant Allen C. Eaves