UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEMCELL TECHNOLOGIES CANADA INC., et al.,

               Plaintiffs,

     v.

STEMEXPRESS, LLC, et al.,

               Defendants.

Case No.  21-cv-01594-VC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**

Re: Dkt. No. 56

The bulk of StemExpress's counterclaims survive this motion to dismiss because StemExpress has adequately alleged that the plaintiffs misappropriated its trade secrets and breached the confidentiality agreement. However, the California Unfair Competition Law (UCL) claim is dismissed as it is displaced by the California Uniform Trade Secrets Act (CUTSA) claim. Additionally, StemExpress has not adequately alleged that this Court has personal jurisdiction over Eaves, so all claims against him are dismissed as well.

<u>Misappropriation of Trade Secrets</u>: To state a cause of action for trade secret misappropriation under CUTSA, a plaintiff must allege that "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (quoting *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015)); *see CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 297 (2008). While a plaintiff need not "spell out the details of the trade secret" in its pleadings, it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the

defendant to ascertain at least the boundaries within which the secret lies." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252-53 (1968); *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).

This time around, StemExpress has met its burden. First, although it is a close question, StemExpress has now alleged its trade secrets in sufficient detail to survive a motion to dismiss. The complaint identifies multiple categories of trade secrets, including StemExpress's "internal processes for initial donor screening" and management of donor pools "to achieve optimal blood draws"; its "batch records" for its products, which functioned as the "recipe books for its procurement and manufacturing"; and the "quality control test methods" used to produce and isolate finished products "to ensure consistent validation of finished products and equipment used."

These allegations are of similar specificity to allegations in other cases in this district in which CUTSA claims have been permitted to go forward. *See, e.g.*, *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 77 (N.D. Cal. 2020) (upholding a trade secret claim involving the plaintiff's "specialized process for anodizing prefinished alloy tubes"). At this early stage, StemExpress's allegations are sufficient to put the plaintiffs on notice of "the boundaries within which the secret lies." *Diodes*, 260 Cal. App. 2d at 253.

Second, StemExpress has painted a clear picture of how the plaintiffs misappropriated these trade secrets. After gaining access to this information, the plaintiffs allegedly used it to form a knockoff of StemExpress's business, "replicat[ing] . . . StemExpress' procurement and manufacturing operations." Finally, StemExpress has plausibly alleged that the creation of this knockoff company has harmed it financially.

Breach of Contract: StemExpress's claim that the plaintiffs breached the confidentiality agreement survives for the same reasons. The plaintiffs contend that this claim should be dismissed because it is displaced by CUTSA. But "[b]y its terms, [C]UTSA does not displace breach of contract claims." *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495, 499 (2013); *see* Cal. Civil Code § 3426.7(b) ("This title does not affect . . . contractual remedies,

whether or not based upon misappropriation of a trade secret").

      <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>: In addition to explicit promises, every contract includes an implicit promise not to take an action that would deprive the other contracting party of the benefits of their agreement. *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013). This "implied covenant of good faith and fair dealing" protects the parties' "reasonable expectations . . . based on their mutual promises." *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 885 (2011). A claim of a breach of this obligation involves both more and less than a breach of contract claim. To state a claim, a plaintiff must go beyond mere allegations of a breach of the contract's express terms and allege unfair dealing that "unfairly frustrates the agreed common purposes" of the contract. *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). But the implied covenant can be breached even if the underlying contract is not. *Id.*

      According to the allegations, StemExpress entered into the confidentiality agreement so that it could do business with the plaintiffs without losing control of its confidential information. The plaintiffs, on the other hand, allegedly entered into the agreement with the express purpose of gaining access to the information they needed to successfully copy StemExpress's manufacturing business. If true, the plaintiffs' actions plainly frustrated StemExpress's reasonable expectation of confidentiality under the contract.

      Further, this claim is not duplicative of StemExpress's breach of contract claim. Even if the plaintiffs are able to identify a technical argument for why they did not *quite* violate the terms of the confidentiality agreement, it would be difficult to conclude (if these allegations prove to be true) that they did not frustrate the purposes of the contract, and intentionally so.[1]

      <u>Unfair Competition Law</u>: Under California law, CUTSA "provides the exclusive civil

---

[1] This claim is not displaced by CUTSA because it arises out of the contract between the parties. *See, e.g.*, *Indigo Group USA, Inc. v. Polo Ralph Lauren Corp.*, 2014 WL 12573380, at *8 (C.D. Cal. Mar. 17, 2014).

remedy for conduct falling within its terms," displacing "other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Technologies, Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010). Although the California caselaw describing CUTSA displacement is not entirely clear, the general inquiry is whether the allegations go beyond the facts that made up the trade secret claim. *See id.* at 237-38; *Angelica Textile*, 220 Cal. App. 4th at 506 ("[C]UTSA does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim."); *Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) ("To survive [displacement], [a plaintiff's] claims must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'") (quoting *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012)).

Although StemExpress may be able to allege a claim under the UCL that meets these requirements, it has not done so. At this juncture, StemExpress's allegations all fall into one of two camps: breach of contract and trade secret misappropriation. Setting aside the allegations of trade secret misappropriation, StemExpress's allegations amount to a breach of contract. But the allegations making up the breach of contract claim are not sufficient to form the basis of a UCL claim, because StemExpress has not alleged the inadequacy of remedies at law—a requirement for pleading a claim for equitable relief under the UCL in federal court. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Therefore, to the extent StemExpress has alleged activity that is cognizable under the UCL, its cause of action is displaced by CUTSA.

<u>Personal Jurisdiction over Eaves</u>: In addition to its claims against the various corporate entities involved in this dispute, StemExpress has brought claims against Eaves, the founder and CEO of Stemcell Tech. Eaves argues that the claims against him should be dismissed for lack of personal jurisdiction.

StemExpress does not attempt to argue that this Court has general jurisdiction over Eaves. Instead, it argues that the court may exercise specific jurisdiction over Eaves, as this

dispute arises of our Eaves's contacts with California. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The question, then, is whether Eaves has sufficient "minimum contacts" with California "arising from, or related to," his alleged actions involving StemExpress. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).[2]

To begin, StemExpress attempts to bootstrap jurisdiction over Eaves via this Court's jurisdiction over the plaintiff corporations. But the contacts of a corporation cannot be imputed to its officers unless the officer is the corporation's "alter ego." *See Park Miller, LLC v. Durham Group, Ltd.*, 2020 WL 1955652, at *12 (N.D. Cal. Apr. 23, 2020). This is a high bar— StemExpress must show "(1) that there is such unity of interest and ownership that the separate personalities or the two entities no longer exist, and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). StemExpress has not done so here: there are no allegations that the relevant corporations were "mere instrumentalities" of Eaves or that any corporate formalities were ignored. *See Park Miller*, 2020 WL 1955652, at *13. To establish personal jurisdiction, then, StemExpress must allege that Eaves had sufficient minimum contacts with California based on his own actions.

StemExpress next points to 1) various contracts between StemExpress and Stemcell Tech, which were signed by Eaves; and 2) Canventa's corporate documents, which were also signed by Eaves. But "a corporate officer does not become a party to the contract simply 'by signing it in the officer's representative capacity.'" *In re Boon Global Limited*, 923 F.3d 643, 651 (9th Cir. 2019) (quoting Restatement (Third) of Agency § 6.01 (Am. Law Inst. 2003)). As Eaves signed these contracts in his official capacity as CEO of Stemcell Tech and Canventa, respectively, they do not count towards Eaves's contacts with California.

Finally, StemExpress argues that there is nevertheless jurisdiction over Eaves because he

---

[2] "Because California's long-arm jurisdictional statute is co-extensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01.

engaged in the tortious activities described in the complaint. It is true that a corporate officer's wrongful actions can serve as the basis for jurisdiction, even when performed within an officer's official capacity. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). But StemExpress has not plausibly alleged that Eaves was personally involved in the decision-making behind its claims. StemExpress's conclusory allegations that Eaves "planned, schemed and conspired" with the corporate entities is insufficient to establish jurisdiction within the confines of due process. The claims against Eaves are therefore dismissed.

* * *

As discussed at the hearing, to the extent StemExpress's claims are dismissed, dismissal is without leave to amend. However, if discovery reveals a basis for a UCL claim or for personal jurisdiction over Eaves, StemExpress may request leave to amend its claims at that time.

The plaintiffs must file an answer to the counterclaims within 14 days of this order.

**IT IS SO ORDERED.**

Dated: February 21, 2022

VINCE CHHABRIA
United States District Judge

6