one llp
intellectual property & entertainment law

23 Corporate Plaza
Suite 150-105
Newport Beach, CA 92660
310.866.5157 Tel
310.943.2085 Fax
www.OneLLP.com

David W. Quinto
213.604-1777 Direct
dquinto@onellp.com

August 8, 2022

**VIA ELECTRONIC CASE FILING AND MESSENGER**

The Honorable Laurel Beeler
United States Magistrate Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, San Francisco, CA 94102

**Re:** STEMCELL Technologies Canada Inc. et. al. v. StemExpress, LLC et. al, Case No.: 3:21-cv-01594-VC – Joint Letter Brief

Dear Judge Beeler:

Pursuant to Section III (4) of this Court's October 27, 2021, Standing Order, Plaintiff Cross-Defendant STEMCELL Technologies Canada Inc. ("STEMCELL") and Defendant and Counter-Plaintiff StemExpress LLC ("StemExpress"), submit this letter brief concerning the amended interrogatory responses StemExpress served on July 6, 2022. This motion addresses 8 of StemExpress's deficient responses, including 7 which it continued to refuse to answer at all. STEMCELL also seeks an order compelling StemExpress to provide complete responses to all its interrogatories and requiring it to reimburse STEMCELL for its reasonable attorney's fees incurred to bring this motion.

Inasmuch as the fact discovery cutoff is in late September, STEMCELL respectfully asks the Court to decide this motion promptly.

**Meet and Confer**

The parties met and conferred on the issues raised herein on a Zoom call conducted July 25, 2022.

**Issues in Dispute**

A Statement of Unresolved Issues, Summaries of the Parties' Positions with Citations to Supporting Authorities, and Each Party's Final Proposed Compromise is annexed hereto.

**Plaintiff's Position**

STEMCELL has sought to discover what trade secret and what confidential information it has allegedly misused through three methods: through document requests, deposition, and interrogatories. All have failed. StemExpress has refused to produce documents disclosing them. By order dated June 14, 2022 (CAND-ECF 108), this Court ruled that STEMCELL should seek that information through interrogatories rather than through a Rule 30(b)(6) deposition. However, StemExpress has refused to answer interrogatories seeking that information.

On January 5, 2022, STEMCELL served 11 interrogatories on StemExpress. Following extensions of time, StemExpress responded on March 18 with virtually nothing but objections.

one llp

On July 6, StemExpress served amended responses. A true and correct copy of the interrogatories and StemExpress's amended responses are attached as Exhibit A.

Notwithstanding that StemExpress's three cross-claims seek to recover for the misappropriation or misuse of trade secret or confidential information, StemExpress flatly refused to say what its alleged trade secrets are, what sets them apart from matters generally known in the industry, or even how they were misappropriated. StemExpress also refused to distinguish its claimed trade secrets from its allegedly misappropriated confidential information.

On July 6, 2022, StemExpress finally served amended responses. In doing so, it continued to refuse to say what its allegedly misappropriated trade secrets and confidential information are. Accordingly, STEMCELL seeks an order compelling StemExpress to answer the interrogatories.

The 9th Circuit has explained that "[a] plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). It requires that a trade secret claimant "describe the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," *Imax*, 152 F.3d at 1167. A specific identification of claimed trade secrets is required when ownership of the claimed trade secret is not obvious, as when—as here--they "consist of incremental variations on, or advances in, the state of the art in a highly specialized technical field." *Phillips N. Am. LLC v. Advanced Imaging Servs.*, 2021 U.S. Dist. LEXIS 148163, at *16 (E.D. Cal. Aug. 6, 2021). As trade secret commentators have noted, "trade secret plaintiffs rarely provide a precise and complete identification of the alleged trade secrets at issue without a court order requiring them to do so. This is a strategy, not an accident." Charles Tait Graves and Ryan D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 NW. J. TECH. & INTELL PROP. 68 (2006)

Interrogatory No. 1 asked StemExpress to say exactly what each allegedly misappropriated trade secret is, distinguishing it from matters in the public domain. In the past, StemExpress characterized its trade secrets as refinements and improvements to standard industry practices. It has now changed its allegation of fact, instead characterizing its alleged trade secrets as unique combinations of public domain elements. What has not changed, though, is that it still refuses to set forth its alleged trade secrets.

Interrogatory No. 2 asked StemExpress to distinguish its claimed trade secrets from matters of general knowledge in the trade and of special knowledge of persons skilled in the trade. To prevail on a trade secret claim, it must show that its claimed secrets are not generally known in the trade and are not known to persons skilled in the trade. It has nevertheless refused to answer.

Interrogatory No. 4 asked StemExpress to identify each person with whom each alleged trade secret has been shared. To prevail on its claim, StemExpress must show that it has used reasonable efforts to protect the secrecy of its claimed trade secrets. *See* Cal. Civ. Code § 3426.1(d)(2). Although StemExpress identified 2 consultants, it refused to identify the business entities to which disclosure has been made.

Interrogatory No. 5 asked StemExpress to explain how each claimed trade secret derives independent economic value from not being known to others. That, too, is part of StemExpress's burden at trial. *See* Cal. Civ. Code § 3426.1(d)(1).

Interrogatory No. 6 asked what facts show or tend to show that Cross-Defendants have used any alleged trade secret. Again, this is something StemExpress will have to prove at trial.

one llp

Interrogatory No. 9 asked StemExpress to disclose what confidential, but not trade secret, information was allegedly misappropriated by Cross-Defendants. This is critical because theft of confidential information cannot be alleged as an alternative to theft of trade secrets. Information claimed to be confidential cannot be derived from the same nucleus of operative facts as information claimed to be trade secret. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 234 (2010), *overruled in part on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011); *K.C. Multimedia, Inc. v. Bank of Am. Tech & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009).

Interrogatory No. 10 asked StemExpress to identify customers who purchased cord blood CD34+ from it because that information is critical to proving the allegations of ¶¶ 74-75 of the Amended Complaint.

Interrogatory No. 11 asked StemExpress to identify its leukopak customers to support the liability allegations of ¶¶ 75-75 and damages allegations of ¶¶ 23-36 and 44 of the Amended Complaint.

StemExpress also improperly claimed that it would limit any responses to 2014-2018 notwithstanding that there were open purchase orders through 2020 and notwithstanding that any loss of trade secret protection at any time would vitiate its misappropriation claims.

**Defendants' Position**

StemExpress has gone to great lengths to work with STEMCELL on this matter and has amended its interrogatory responses in accordance with these meet and confer efforts. Despite this, STEMCELL has yet again brought an entirely unnecessary motion before the court to seek resolution of a matter that has already been resolved. As such, StemExpress respectfully requests the Court deny STEMCELL's motion in its entirety, grant a protective order as to these Interrogatories, and award appropriate sanctions to StemExpress as the result of the continuing gamesmanship and improper motion practice by STEMCELL.

After a lengthy meet and confer process between the parties early this year, StemExpress ("SE") agreed to amend Interrogatories 1-9, which was acknowledged in the previous letter brief. See ECF 105. The parties came to an agreement regarding scope of amended responses, and information sought by STEMCELL ("SCT"). On June 14, 2022, the Court ruled on this matter, taking into consideration the agreement to amend and meet and confer efforts by the parties, and finding the issue moot as to Interrogatories 1-9. See ECF 108. The Court ruled with regard to Interrogatories 10 and 11, that meet and confer efforts between the parties might resolve these outstanding issues, and thus the Court declined to compel further responses.

SE served its amended interrogatory responses on July 6, 2022. These responses were in accordance with previous meet and confer discussions between the parties, including the specific scope agreed to between the parties. It was further agreed during the course of these meet and confer efforts, that if SCT needed more information or had any concerns with regard to amended responses, meet and confer efforts could continue.

On July 25, 2022, counsel for SCT and SE engaged in a meet and confer via Zoom. This call occurred only after numerous efforts by SE to schedule a call to discuss SCT's deficient discovery responses, including a belated production by Plaintiff Canventa, its failure to comply with the Court's Protective Order and the improper "Highly Confidential" designation of 70% of Canventa's document production. See ECF 118. Despite SE's good faith efforts to specify in writing any specific issues and providing SCT and Canventa with a detailed chart of issues (sent on 7/1) and an estimate of time to meet and confer, during this call counsel for SCT insisted on first discussing SCT's concerns with SE's amended discovery responses. Counsel for SCT repeatedly stated he was unwilling to provide a written meet and confer letter, stating only that SE

failed to respond to the requests and refused to place in writing at that time (or in advance) any clarification as to SCT's objections to any of the responses. All SCT said was that SE did not respond to the interrogatories, which is not accurate. SE contends SCT is not interested in engaging in a good faith meeting of the minds in order to resolve discovery issues amicably between the parties. See FRCP 37(a)(1). Instead, SCT insists on filing motion after motion on issues that it has failed to properly and timely articulate, refuses to engage in a process to resolve potential disputes, and appears determined to waste time, money and judicial resources. This not the first time they engaged in that process, and it will likely not be the last.

Despite SCT's allegations that SE refused to properly identify its trade secrets, in SE's amended responses it provided more than 13 pages purely to describing its relevant trade secrets, and approximately 13 pages describing how these trade secrets were distinguishable from general/special knowledge in the trade. As this explanation was detailed and specific, and SE's previous trade secret disclosure was previously deemed sufficient (See ECF 68, 72, 80, and 98), it seems that SCT's repeated demands are intended to cause unnecessary delay and expense, rather than to obtain information. This motion is just one more in a long line of costly and time-consuming wasteful acts, designed to cause prejudice to SE. These needless, wasteful litigation tactics and discovery games need to stop, and SCT has shown repeatedly that these tactics will continue absent judicial intervention.

As such, sanctions against SCT are extremely appropriate in this matter. This is the second time this same motion to compel has been brought before the Court, citing nearly identical authority, based on issues that have already been resolved. See FRCP 37(a)(5)(B). If permitted, SE will file a motion seeking its attorneys' fees for costs to defend against this motion, in the amount of $____.

As an example, Interrogatories 1 and 2 have been responded to, in detail, and in accordance with the meet and confer efforts of the parties. SCT refuses to articulate in writing why these responses are deficient. Further, SCT's objection to these amended responses is that the trade secret designation is improper, an issue that has been rejected and resolved.

As with Interrogatories 1 and 2, SCT refuses to articulate in writing why SE's response to Interrogatories 4 is deficient. That said, interrogatory 4 broadly sought information regarding persons with whom each alleged trade secret was supposedly shared. Pursuant to the meet and confer efforts of the parties, SCT agreed to limit this request to outside consultants. Therefore, this request was answered as agreed upon. However, SCT is now moving the goal posts by claiming that SE must identify anybody who may have had access to SE stated trade secrets, which is different than what was previously agreed to.[1] Further, as was also discussed, if SCT had desired more information in response to this request, SE was willing to meet and confer as to scope of a further amended response, and asked that it be set forth in writing and the estimated time of such discussion. This is key as SCT was unprepared to have a meaningful meet and confer previously, admitting they did not even read information provided to them. However, instead of providing a written meet and confer outlining SCT's alleged concerns, it filed this entirely unnecessary motion, clearly intended to cause prejudice to SE, and to present a false narrative to the Court.

Interrogatory 5 has been responded to. No further response is warranted, nor did SCT properly meet and confer on any alleged deficiency, nor did SCT properly meet and confer on any alleged deficiency beyond what was discussed on July 25th.

In response to Interrogatory 6, SE provided more than 11 pages of detail, outlining the facts in response to the interrogatory, and in accordance with previous meet and confer efforts of the

[1] The first time this issue was raised by SCT was in this motion.

parties. No further response is warranted at this, nor did SCT properly meet and confer on any alleged deficiency beyond what was discussed on July 25th.

Interrogatory 9 has been responded to, in detail, and in accordance with meet and confer efforts of the parties. No further response is warranted at this, nor did SCT properly meet and confer on any alleged deficiency beyond what was discussed on July 25th.

SE has gone to great efforts to attempt to meet and confer with SCT with regard to Interrogatories 10 and 11, pursuant to the Court's Order. See ECF 108. However, despite this, SCT has been unwilling to consider any compromise short of full and complete responses to these requests as posed. Per SCT and the Court, these interrogatories are relevant to damages to SCT "resulting from SE's alleged shipment delays and diversion of sales from SCT." However, SCT has continually refused to identify specific shipments that were allegedly delayed, or time periods of certain relevant delays, instead insisting that "at all times from January 1, 2017 (before, actually) and December 2020, SE had purchase orders from SCT that had gone unfulfilled for more than 90 days."[2] See Exhibit C. SE remains willing to meet and confer, and to compromise regarding these requests. However, not only is the burden associated with these requests substantial, but SE remains extremely concerned about the sensitive nature of this information, especially in the context that SCT has already sought to remove the confidential designation from SE's document production and SCT/Canventa are alleged to have misappropriated confidential and proprietary information. SE is willing to discuss a reasonable compromise as to these interrogatories which will provide SCT with reasonable information, while also limiting the burden to SE, focusing on alleged dates (rather than almost 5 years of sales, some of which go well beyond the contract[3]) assuaging its concerns regarding the highly confidential nature of such responses.

As to SCT's demand that "SE Should Not Be Permitted to Limit Its Answers to Just the Years 2014 Through 2018," this issue has previously been resolved. See ECF 105 and 108. While the parties agreed to limit the scope of requests to the contractual relationship between the parties, SCT now seeks to expand that to 2020. With regard to this request on the attached statement of unresolved issues, SCT used almost identical language to the last time this issue was brought before the Court. This is another instance of SCT attempting to revive long resolved issues in order to inundate the Court with its various demands. Not only is this improper, but this conduct is sanctionable. See FRCP 37(a)(5)(B); FRCP 11(b).

For the foregoing reasons, SE respectfully requests that the Court deny SCT's motion in its entirety, and grant a protective order as to Interrogatories 1, 2, 4-6, and 9-11. SE reserves the right to seek by way of motion, as required by the LR, sanctions in the form of reasonable attorneys' fees and cost against SCT and/or its counsel.

Sincerely,

*/s/ David W. Quinto*
David W. Quinto
One LLP
*Attorneys for Plaintiffs, Cross-Defendants, and Counterclaim Defendant*

---

[2] SCT has failed to identify a single document produced pursuant to FRCP 26 which provides clarification as to relevant delays or pertinent time periods in which supposed delays or cancellations occurred.

[3] SCT admitted during the meet and confer call SCT canceled all post-contract orders, and further counsel could not identify a single shipment or period of time where they allege a delay that supposedly caused damage, which is required under Rule 26 as further explained in ECF 118, p. 6-7, 15, 16 and its supporting evidence. See Exhibit C.

Port Parker
Parker Law Group
*Attorneys for Defendants and Cross-complainant*

# EXHIBIT A

David W. Quinto (Bar No. 106232)
dquinto@onellp.com
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150
Newport Beach, CA 92660
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

*Attorneys for Plaintiffs and Cross-Defendants*
STEMCELL Technologies Canada Inc, STEMCELL Technologies Inc., and Canventa Life Sciences, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STEMCELL TECHNOLOGIES CANADA INC., f/k/a STEMCELL TECHNOLOGIES INC., a Canadian corporation; STEMCELL TECHNOLOGIES INC., a Nevada corporation; and CANVENTA LIFE SCIENCES, INC., a Delaware corporation,

Plaintiffs,

v.

STEMEXPRESS, LLC, a California limited liability corporation; CATHERINE S. DYER a/k/a CATE DYER, an individual; and DOES 1-10, inclusive,

Defendants.

---

STEMCELL EXPRESS, LLC, A California limited liability corporation;

Counter-Plaintiff

v.

STEMCELL TECHNOLOGIES CANADA INC., et al.

Cross- and Counter-Defendants.

Case No. 3:21-cv-01594-VC
The Honorable Laurel Beeler
United States Magistrate Judge

**DISCOVERY MATTER**

**PLAINTIFF STEMCELL TECHNOLOGIES CANADA INC.'S, STATEMENT OF UNRESOLVED INTERROGATORY DISPUTES IN SUPPORT OF MOTION TO COMPEL ANSWERS TO STEMCELL'S INTERROGATORIES**

**Statement of Unresolved Issues, Summaries of the Parties' Positions with Citations to Supporting Authorities, and Each Party's Final Proposed Compromise**

| **Issue 1--Interrogatory No. 1: As to each of YOUR trade secrets allegedly used or disclosed by any Cross- or Counter-Defendant, identify the trade secret with sufficient specificity to distinguish it from information in the public domain, including without limitation information known to the public, information known to competitors, information disclosed in patents or published patent applications, information disclosed in research papers or at professional conferences, and information that would be easily ascertainable by persons ordinarily skilled in the art.** | | |
|---|---|---|
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| The 9th Circuit has explained that, "[a] plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). Doing so requires that a trade secret claimant "describe the trade secret | StemExpress has amended its response to this request, providing a lengthy, detailed response which identifies its trade secrets, and distinguishes them from information known to the public. See *BladeRoom Group Limited v. Facebook, Inc.* 2018 WL 514923, at *3 (N.D. Cal., Jan. 23, 2018, No. 5:15-CV-01370-EJD). STEMCELL has failed to provide any clarification as | STEMCELL has not offered to compromise its entitlement to know what, exactly, is in issue. |

| | | |
|---|---|---|
| with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," *Imax,* 152 F.3d at 1167; Cal. Civ. Code § 3426.1(d)(1) (a trade secret must derive independent economic value "from not being generally known to the public or to other persons who can obtain economic value from its . . . use).<br>A specific identification of claimed trade secrets is required when ownership of the claimed trade secret is not obvious, as when—as here--they "consist of incremental variations on, or advances in, the state of the art in a highly specialized technical field." *Phillips N. Am. LLC v. Advanced Imaging Servs.*, 2021 U.S. | to exactly why it believes that StemExpress' trade secret designation is insufficient, which, as StemExpress' identification of its trade secrets was substantial, leaves StemExpress with no way to determine what will be enough to satisfy STEMCELL.<br>STEMCELL has not alleged that StemExpress did not properly respond to this request, but that the trade secret designation by StemExpress is insufficient. This issue is entirely moot, as the Court has already ruled that StemExpress' trade secret designation is sufficient. See ECF 80. Further, StemExpress has responded to this request within the confines of the extensive meet and confer | |

| | | |
|---|---|---|
| Dist. LEXIS 148163, at *16 (E.D. Cal. Aug. 6, 2021).<br>StemExpress's new contention—that its trade secrets are merely unique combinations of public domain elements—does not help because it does not explain what the purportedly unique combinations are. Are syringes and needles included? Who knows?<br>StemExpress's characterization of its claimed trade secrets does not satisfy the requirement that it disclose the actual secrets in discovery. | efforts of the parties.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |

**Issue 2--Interrogatory No. 2: As to each trade secret referred to in response to Interrogatory 1, describe it with sufficient particularity to separate it from matters of general knowledge in the trade and of special knowledge of persons skilled in the trade.**

| Moving Party's (P/D) Short Argument | Opposing Party's (P/D) Short Argument | Compromises |
|---|---|---|
| The 9th Circuit has explained that, "[a] plaintiff seeking relief for misappropriation of | StemExpress has amended its response to this request, providing a lengthy, | STEMCELL has not offered to compromise its |

| | | |
|---|---|---|
| trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). It requires that a trade secret claimant "describe the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," *Imax*, 152 F.3d at 1167. *Accord*, *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 43 (2014).<br>A specific identification of claimed trade secrets is required when ownership of the claimed trade secret is not obvious, as when—as here--they "consist of | detailed response which identifies its trade secrets, and distinguishes them from matters of general or specific knowledge of persons in the trade. See *BladeRoom Group Limited v. Facebook, Inc*. 2018 WL 514923, at *3 (N.D. Cal., Jan. 23, 2018, No. 5:15-CV-01370-EJD). STEMCELL has failed to provide any clarification as to exactly why it believes that StemExpress' trade secret designation is insufficient, which, as StemExpress' identification of its trade secrets was substantial, leaves StemExpress with no way to determine what will be enough to satisfy STEMCELL.<br><br>STEMCELL has not alleged that StemExpress did not properly respond to this | entitlement to know what, exactly, is in issue. |

| | | |
|---|---|---|
| incremental variations on, or advances in, the state of the art in a highly specialized technical field." *Phillips N. Am. LLC v. Advanced Imaging Servs.*, 2021 U.S. Dist. LEXIS 148163, at *16 (E.D. Cal. Aug. 6, 2021).<br><br>StemExpress's new contention—that its trade secrets are merely unique combinations of public domain elements—does not help because it does not explain what the purportedly unique combinations are. | request, but that the trade secret designation by StemExpress is insufficient. This issue is entirely moot, as the Court has already ruled that StemExpress' trade secret designation is sufficient. See ECF 80. Further, StemExpress has responded to this request within the confines of the extensive meet and confer efforts of the parties.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |

| **Issue 3--Interrogatory No. 4: As to each trade secret identified in response to Interrogatory No. 1, separately identify each person or entity to whom or to which YOU have disclosed it, whether or not the disclosure was made pursuant to a confidentiality or non-disclosure agreement.** | | |
|---|---|---|
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| Interrogatory No. 4 asked StemExpress to identify each entity to which it has disclosed each claimed trade secret, but it has refused to do so. Knowing their identities would allow discovery of whether the claimed secrets were subject to reasonable measures to protect their secrecy and are in fact secret. Identifying just two independent contractors, while refusing to disclose corporate entities to which disclosures were made, is insufficient. | As part of the meet and confer efforts between the parties, it was agreed not only that the scope of this request was to include only outside consultants and similar third parties. This agreement included that StemExpress did not need to identify its own employees, but also that customers were similarly excluded from this request. As such, StemExpress' response is full and complete within the meet and confer agreement regarding this request.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer | STEMCELL agreed that StemExpress did not need to identify its employees to whom disclosure was made but does not agree to compromise its request further.<br><br>As per the meet and confer between the parties, STEMCELL and StemExpress agreed that the response to this interrogatory would include outside contractors, and not StemExpress employees or customers. |

| | | |
|---|---|---|
| | as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | StemExpress has responded to the request as such. STEMCELL is now attempting to move the goal posts. |
| **Issue 4--Interrogatory No. 5: As to each trade secret identified in response to Interrogatory No. 1, explain how it derives independent economic value from not being known to the public or others who can derive a financial benefit from using it.** | | |
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| StemExpress should explain how each trade secret derives independent economic value from not being known to competitors. California Civil Code § 3426.1(d)(1) requires that to constitute a trade secret, information must, among other requirements, "derive[] independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or | StemExpress has amended its response to this request, providing a lengthy, detailed response which explains how it derives economic value from its trade secrets. STEMCELL has provided no clarification as to why it considers this response to not fully answer the interrogatory. StemExpress has, in fact, explained "how each trade secret derives independent economic value from not being known to | STEMCELL has not offered to compromise its entitlement to know what facts underlie StemExpress's claim that it has protectable trade secrets. |

| | | |
|---|---|---|
| use." At trial, StemExpress will have the burden to show that each claimed specific trade secret is "sufficiently valuable and secret to afford an actual or potential economic advantage over others" who do not possess it. *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 62 and n. 26 (2014). | competitors."<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |
| **Issue 5--Interrogatory No. 6: As to each trade secret identified in response to Interrogatory No. 1, state as to each Cross-Defendant all facts that show or tend to show the Cross-Defendant has used that trade secret.** | | |
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| Nothing could be more fundamental to discovery than asking the complainant what information it has showing that its trade secrets have been used. The long explanation that STEMCELL might have wanted to use StemExpress's purported trade secrets contains no facts suggesting | StemExpress provided an 11-page response to this interrogatory, explaining in extensive detail the facts which show or tend to show that Cross-Defendant has used that trade secret. For STEMCELL to now claim that StemExpress has not fully responded to this request is extremely | STEMCELL has not offered a compromise its request to discover facts related to its alleged liability. |

| | | |
|---|---|---|
| that it did so. Moreover, StemExpress contends that Eric Martinelli, a STEMCELL/Caneventa employee, offered to disclose confidential information to it obtained from Martinelli's former employers, who were StemExpress's competitors. And, the contracts between STEMCELL and StemExpress allowed STEMCELL to access StemExpress's information for legitimate business reasons. | disingenuous and shows the lengths to which STEMCELL is willing to go in order to fabricate issues to bring before the Court.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |

**Issue 6--Interrogatory No. 9: State with specificity what confidential, but non-trade secret information "concerning [StemExpress's] business, methods, techniques, and processes in the procurement and manufacturing operations," was allegedly misused by Defendants as alleged in paragraph 77 of the First Amended Counterclaims.**

| Moving Party's (P/D) Short Argument | Opposing Party's (P/D) Short Argument | Compromises |
|---|---|---|
| StemExpress has characterized its allegedly misappropriated information without saying what it is. | StemExpress responded to this request in detail, providing identification and specificity as to the | STEMCELL has not offered a compromise because distinguishing trade |

| | | |
|---|---|---|
| STEMCELL is entitled to know.<br>Further, information claimed to be confidential cannot be derived from the same nucleus of operative facts as information claimed to be trade secret. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 234 (2010), *overruled in part on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011); *K.C. Multimedia, Inc. v. Bank of Am. Tech & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009). Inasmuch as StemExpress has said that its "method, technique, and process for screening potential biospecimen donors," its "method technique, and process for scheduling donors for collections," its "proprietary step-by-step instructions" for | confidential, non-trade secret information that was allegedly misused. Just because STEMCELL is dissatisfied with the answer does not mean that StemExpress did not answer the interrogatory in full. The fact that STEMCELL is unwilling or unable to provide further clarification as to specifically how StemExpress "characterized its allegedly misappropriated information without saying what it is," is a clear indication that this argument is entirely without merit.<br><br>STEMCELL's claim that "confidential cannot be derived from the same nucleus of operative facts as information claimed to be trade secret" is not only | secret information from confidential information is critical. |

| | | |
|---|---|---|
| processing samples, its "method and technique of designing and configuring its biospecimen collection center and laboratory," its "method, technique, and process for freezing products," its "method, technique, and process for manufacturing" custom products, and its "process for producing a Certificate of Analysis" are trade secret, Interrogatory No. 9 asked it to identify the confidential, but not trade secret, information, it claims was misappropriated. In response, StemExpress merely re-phrased its claimed trade secrets without setting forth any allegedly misappropriated confidential information. | inapplicable to the circumstances of this case, but also completely irrelevant in a motion to compel further responses. The issue at hand is whether StemExpress properly responded to the request, not the ultimate merits of whether StemExpress' confidential information qualifies for protection. Additionally, per Civil Code § 3426.7, contractual remedies (either based on trade secret misappropriation and not based on such) and other civil remedies not based upon trade secret misappropriation are not preempted or superseded by trade secret misappropriation claims. See also *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 505 | |

| | | |
|---|---|---|
| | (2013).<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |
| **Issue 7--Interrogatory No. 10: Identify all of YOUR customers who purchased cord blood CD34+ from YOU since January 1, 2016.** | | |
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| Paragraph 74 of the First Amended Complaint alleges that "The STEMCELL Entities have, and at all times had, valid contracts with customers who purchased cord blood CD34+ cells from them. Defendants knew of those contracts because they supplied cord blood CD34+ cells to STEMCELL for re-sale to the STEMCELL | StemExpress remains willing to meet and confer on a more limited scope for the response to this request. As noted by the Court, this interrogatory is relevant to STEMCELL's damages relating to alleged delays and diversion of sales. StemExpress has repeatedly requested a more tailored date range for which such supposed delays and/or | STEMCELL agreed to limit this request to January 1, 2017, through December 31, 2020.<br><br>StemExpress is willing to discuss a reasonable compromise on the scope of this request. However, a scope of four full years is not |

| | | |
|---|---|---|
| Entities' customers." Paragraph 75 alleges that "Defendants engaged in intentional acts that were intended to and did force Plaintiffs to breach their customer contracts and that were intended to and did interfere with the STEMCELL Entities' contractual relationships with their customers. Without limitation, Defendants purposely delayed fulfilling orders placed by STEMCELL while knowing and intending that doing so would prevent Plaintiffs from timely fulfilling purchase orders from Plaintiffs' customers. At the same time, Defendants unfairly competed with the STEMCELL Entities by supplying Plaintiffs' customers with their | diversion of sales occurred. This would allow StemExpress to provide the information needed by STEMCELL while also reducing the burden to StemExpress and alleviating some of StemExpress' concerns regarding the sensitive nature of this information. To this end, StemExpress sent STEMCELL a letter on August 3, 2022, again requesting this information and that STEMCELL comply with its Rule 26 and 37 obligations, so that StemExpress can adequately prepare its defense and prepare for upcoming depositions, and so that the scope of this request could be reasonably limited.<br><br>Regrettably, STEMCELL has stated that it is | narrowly tailored or reasonable. |

| | | |
|---|---|---|
| competing products. In breach of their obligations under the Supply Agreement, Defendants disclosed that cord blood CD34+ cells products sold under the STEMCELL brand were supplied by Defendants, thus denying the STEMCELL entities an important right they had bargained for. Defendants did so to make the market aware that the STEMCELL Entities could not be counted upon to fulfill orders and that the STEMCELL Entities' customers could obtain identical or very similar products from Defendants."<br><br>This interrogatory thus directly relates to STEMCELL's damages claims. *See* First Amended Complaint, ¶¶ 23-36 and 44. | unwilling to compromise in any way on this request and has repeatedly claimed that the relevant date range for this request is the entirety of January 1, 2017 to December 31, 2020.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |

| Issue 8--Interrogatory No. 11: Identify all of YOUR customers who purchased leukopaks from YOU since January 1, 2016 | | |
|---|---|---|
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| The requested information is likely to show that given the choice between supplying cord blood CD34+ cells to STEMCELL as required by the parties' Supply Agreement or instead selling them as leukopaks to third parties, StemExpress did the latter.<br>Paragraph 74 of the Amended Complaint alleges that the STEMCELL Entities had "valid contracts with customers who purchased cord blood CD34+ cells from them."<br>Paragraph 75 alleges that StemExpress "purposely delayed fulfilling orders placed by STEMCELL while knowing and intending that doing so would prevent | StemExpress remains willing to meet and confer on a more limited scope for the response to this request. As noted by the Court, this interrogatory is relevant to STEMCELL's damages relating to alleged delays and diversion of sales. StemExpress has repeatedly requested a more tailored date range for which such supposed delays and/or diversion of sales occurred. This would allow StemExpress to provide the information needed by STEMCELL while also reducing the burden to StemExpress and alleviating some of StemExpress' concerns regarding the sensitive nature of this information. To this end, | STEMCELL has offered to limit the time period to January 1, 2017, through December 31, 2020.<br><br>StemExpress is willing to discuss a reasonable compromise on the scope of this request. However, a scope of four full years is not narrowly tailored or reasonable. |

| | | |
|---|---|---|
| Plaintiffs from timely fulfilling purchase orders from Plaintiffs' customers. At the same time, Defendants unfairly competed with the STEMCELL Entities by supplying Plaintiffs' customers with their competing products."<br>This interrogatory thus directly relates to STEMCELL's damages. | StemExpress sent STEMCELL a letter on August 3, 2022, again requesting this information and that STEMCELL comply with its Rule 26 and 37 obligations, so that StemExpress can adequately prepare its defense and prepare for upcoming depositions, and so that the scope of this request could be reasonably limited.<br><br>Regrettably, STEMCELL has stated that it is unwilling to compromise in any way on this request and has repeatedly claimed that the relevant date range for this request is the entirety of January 1, 2017 to December 31, 2020.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer | |

| | | |
|---|---|---|
| | as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | |
| **Issue 9: StemExpress Should Not Be Permitted to Limit Its Answers to Just the Years 2014 Through 2018.** | | |
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| StemExpress has asserted as a general objection that it will produce information relating only to matters occurring from 2014 through 2018 notwithstanding that the parties' Supply Agreement terminated in 2019, orders were fulfilled after 2020, and StemExpress has not limited its damages claims to damages incurred only prior to 2019. Because StemExpress has alleged continuing trade secret misappropriation, it cannot be permitted to limit discovery to the period from | Not only did the parties previously agree to limit the scope of all requests to the duration of the contractual relationship between the parties (See ECF 105), but this was also acknowledged by the Court as part of its previous discovery order. See ECF 108. For STEMCELL to now attempt to rewrite history is entirely unreasonable, and sanctionable behavior. This argument is clearly brought with the intent to annoy, cause unnecessary delay, or needlessly increase the cost | STEMCELL has agreed to limit to interrogatories related to StemExpress's performance under the parties' Supply Agreement to January 1, 2017, though December 31, 2020, but cannot agree to limit its requests concerning the existence or use of trade secrets or confidential information. |

| | | |
|---|---|---|
| 2014 through 2018. Loss of trade secret protection at any time would vitiate StemExpress's claims, all of which turn on alleged trade secret misappropriation. | of litigation. See Federal Rules of Civil Procedure 11(b). Further, as StemExpress made no such "general objection that it will produce information relating only to matters occurring from 2014 through 2018" in its amended responses to interrogatories, this claim by STEMCELL is even more outrageous.<br><br>Before filing this motion, STEMCELL failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1), and made no true good faith attempt to resolve this issue prior to seeking judicial intervention. | The parties previously came to an agreement that responses would be limited to the duration of the contractual relationship between the parties. STEMCELL is now attempting to move the goal posts, which is completely unacceptable. |
| **Issue10: StemExpress Should Be Ordered to Pay STEMCELL Reasonable Expenses Incurred in Making this Motion.** | | |
| **Moving Party's (P/D) Short Argument** | **Opposing Party's (P/D) Short Argument** | **Compromises** |
| StemExpress has resisted | Federal Rule of Civil | STEMCELL has not |

| | | |
|---|---|---|
| saying what its alleged trade secrets and confidential information are in response to document requests, a deposition notice, and interrogatories. STEMCELL has been trying to get responses to the latter since January 6, 2022. Although STEMCELL managed to force StemExpress to served amended responses on July 6, 2022, its responses were evasive.<br><br>Federal Rule of Civil Procedure 37(a)(5)(A) provides in relevant part that if a motion to compel discovery "is granted—or if the disclosure or requested discovery is provided aft the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or | Procedure 37(a)(5)(A) provides in more relevant part that the court must not order payment of expenses if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified."<br><br>STEMCELL made no true attempt to meet and confer on a single issue raised in this motion, provided no written meet and confer outlining its concerns, and this motion is clearly brought with the direct intent to harass, delay, and otherwise cause prejudice to StemExpress, sanctions are clearly more appropriate against STEMCELL. | offered a compromise. |

| | | |
|---|---|---|
| attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." | STEMCELL has shown time and time again that its litigation plan is to inundate both StemExpress and the Court with unnecessary motions, with a long line of costly and time-consuming wasteful acts. STEMCELL has insisted on moving goalposts and has repeatedly presented false narratives to the Court in blatant attempts to prejudice StemExpress. These tactics need to stop. | |

Dated: August 8, 2022

**ONE LLP**

By: /s/ David W. Quinto
David W. Quinto
Joanna Ardalan

*Attorneys for Plaintiffs and Cross-Defendants,*
STEMCELL Technologies Canada Inc,
STEMCELL Technologies Inc., and
Canventa Life Sciences, Inc.