UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEMCELL TECHNOLOGIES CANADA INC., et al., | Case No. 21-cv-01594-VC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF** |
| STEMEXPRESS, LLC, et al., | |
| Defendants. | Re: Dkt. Nos. 154, 181, 193 |

StemExpress's motion for summary judgment on Stemcell's claims is granted in part and denied in part. Stemcell's motion for summary judgment on StemExpress's claims is denied in its entirety. This order assumes the reader is familiar with the case.

**I. StemExpress's Motion**

*Claim 3: Lanham Act § 38.* Summary judgment is granted because Stemcell has not provided evidence that Dyer intended to defraud the Patent and Trademark Office. Nor has Stemcell identified anything false in the application. At most, Stemcell has shown that Dyer misunderstood trademark law. Evidence that Dyer was given better information after she filed the application does not support a claim that she intended to defraud the PTO when she applied for the mark.

*Claim 4: Declaratory relief regarding trademark rights.* At the hearing, StemExpress confirmed that it disclaims any trademark rights for the term "leukopak," including under state law. This claim is dismissed as moot.

*Claim 5: Intentional interference with contracts.* Summary judgment is granted.

Stemcell's claim relies entirely on its executive's statement that she is informed and believes that StemExpress approached at least three of Stemcell's customers, revealed the parties' relationship, and that as a result "these customers stopped, paused and/or failed to begin purchasing" from Stemcell. Sauvé Decl. ¶ 19–20. As presented, this statement is inadmissible hearsay, and Stemcell does not explain how it could be provided in an admissible form. Even if the contents of the executive's statement were admissible, there is no information—either in the statement or anywhere else in the summary judgment record—about the identity of the customers or the terms of the contracts. A jury could only speculate as to whether StemExpress intended to interfere with these unknown contracts—especially as the parties' arrangement did not preclude StemExpress from selling to other customers.[1]

*Claims 6 and 9: Breach of contract and breach of the implied covenant.* Stemcell has three theories of breach: breach of confidentiality, failure to use commercially reasonable efforts to supply products on time, and improper splitting of leukopak collections. Summary judgment is granted in favor of StemExpress as to the first two theories. While there would be a triable issue of fact on the question of commercially reasonable efforts, Stemcell's damages under either theory would be consequential damages barred by Section 13.1 of the Supply Agreement. Motion/Opposition Ex. 4 § 13.1.

Stemcell may go to trial on its claim that StemExpress improperly split "full collection" leukopaks. The operative amendment to the Supply Agreement is ambiguous as to whether the contract *defines* a "full collection" leukopak as one with a certain number of cells, or simply requires that a full collection *have* a certain number of cells in order to be satisfactory. Motion/Opposition Ex. 5 at 2. A jury could adopt the latter reading and conclude that StemExpress had breached by essentially selling large half collections at full collection prices.

---

[1] StemExpress has been ordered to turn over its customer lists so that Stemcell can identify common customers. Dkt. No. 148. StemExpress moved for relief from that order and has presumably not yet turned over those lists. Dkt. No. 154. But Stemcell did not invoke Rule 56(d) on this point, the lists themselves would not create a genuine issue of material fact, and discovery is now closed. StemExpress's motion for relief is therefore granted as to Interrogatories 10 and 11.

Stemcell's damages would be direct damages because it would have paid more for those leukopaks than it would have if StemExpress had not breached. *See id.* (listing prices for full and half collections). It is true that Stemcell's disclosures describe these damages as "lost profit." *Id.* Ex. 48 at 16. But despite this imprecise language, these are direct damages as a matter of law, and the disclosures put StemExpress on sufficient notice. Finally, StemExpress raises a statute of limitations defense for each claim, but that argument is not set out clearly enough to conclude that summary judgment is appropriate.

*Claims 7 and 8: Unfair competition.* Summary judgment is denied on the unfair competition claims to the extent that they rely on the surviving breach of contract claim.

**II. Stemcell's Motion**

*Claims 1 and 2: Breach of contract and breach of the implied covenant.* The Supply Agreement prohibits the misuse of StemExpress's confidential information. Motion/Opposition Ex. 4 § 7.1(b). StemExpress has presented plenty of evidence that Stemcell had access to its facilities, processes, and documentation. *See, e.g.*, *id.* Exs. 7, 13 (audit agendas). Stemcell apparently simultaneously set up Canventa as a competitor to StemExpress. *Id.* Ex. 14, 32. A reasonable jury could conclude that Stemcell used StemExpress's confidential information to get up to speed faster or to produce higher quality products, and in doing so breached either the terms of the contract or the implied covenant of good faith and fair dealing. *See id.* Ex. 107 (comparing processes).

Stemcell argues that breach of contract claims regarding confidential information are displaced by the Uniform Trade Secrets Act. But the statute preserves "contractual remedies." Cal. Civ. Code § 3426.7(b)(1). And the cases cited by Stemcell all show that the statute displaces tort claims—not that it prevents parties from making agreements to protect confidential information. *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958–59 (2009) (breach of confidence, interference with contract, and unfair competition); *Synopsis, Inc. v. Atoptech, Inc.*, 2013 U.S. Dist. LEXIS 153089, at *25–28 (N.D. Cal. Oct. 24, 2013) (common law misappropriation); *Beckton, Dickinson & Co. v. Cytek*

*Biosciences, Inc.*, 2018 U.S. Dist. LEXIS 85121, at *11–20 (N.D. Cal. May 21, 2018) (unfair competition, inducing breach of contract, unjust enrichment, breach of confidence, and conversion); *GSI Technology, Inc. v. United Memories, Inc.*, 2015 U.S. Dist. LEXIS 129568, at *27 (N.D. Cal. Sept. 21, 2015) ("tort claims"); *Loop AI Labs Inc. v. Gatti*, 2015 U.S. Dist. LEXIS 117330, at *6 (N.D. Cal. Sept. 2, 2015) ("common law tort claims"); *Lifeline Food Co. v. Gilman Cheese Corp.*, 2015 U.S. Dist. LEXIS 64155, at *8–14 (N.D. Cal. May 15, 2015) (unfair competition and conversion).

*Claim 3: Misappropriation of trade secrets.* Stemcell argues that StemExpress has failed to identify its purported trade secrets with sufficient particularity, citing *Imax Corporation v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998). In that case, the Ninth Circuit affirmed summary judgment against Imax because it had asserted that "every dimension and tolerance" of its projector was a trade secret without providing the actual dimensions in question. *Id.* at 1166–67.[2] But the specificity required when identifying trade secrets is fact-dependent. *See id.* at 1167. And the facts here differ from *Imax*. StemExpress's evidence does not omit the very information claimed as a trade secret. Rather, this case is more akin to a case distinguished by the *Imax* court, in which it was sufficient for a party to reference the "dimensions and tolerances" embodied in "engineering tolerances and blueprints" that had been misappropriated. *Id.* at 1166–67 (citing *Forro Precision, Inc. v. IBM*, 673 F.2d 1045 (9th Cir. 1982)).

Further, the Ninth Circuit has recently confirmed that whether a party has identified its trade secrets with sufficient particularity can be a fact question for a jury. *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020). A jury could well conclude that StemExpress has not adequately identified its trade secrets. But a jury could also conclude, at the very least, that StemExpress possessed trade secrets in the form of its batch records and operating procedures, which embodied its work refining and tuning a complex process.

---

[2] "Although Imax submitted the precise numerical dimensions and tolerances" later, that submission was improper and those measurements were not the basis for the Ninth Circuit's ruling. *Id.* at 1168.

4

StemExpress has identified those records and that theory.

StemExpress's claims are not barred by the Supply Agreement's prohibition on consequential damages for two reasons. First, under California law, a contract may not directly or indirectly . . . exempt anyone from responsibility for his own fraud . . . or violation of law." Cal. Civ. Code § 1668. StemExpress's breach of contract claims arguably sound in fraud, and its trade secrets claim would be a statutory violation, so the limitation may not absolve Stemcell of liability.[3] Second, and independently, StemExpress has articulated theories of direct damages. Dkt. No. 214. Seen one way, StemExpress did not receive the benefit of its bargain because it would have negotiated higher prices if the agreement permitted Stemcell to use its information to set up Canventa. Seen another (more convincing) way, Stemcell received more than the benefit of *its* bargain, and StemExpress may recover under an unjust enrichment measure of damages. Either theory reflects "losses that . . . arise directly and inevitably from any similar breach of any similar agreement," and are therefore not consequential damages under California law. *Lewis Jorge Construction Management, Inc. v. Pomona Unified School District*, 34 Cal. 4th 960, 968 (2004).[4]

**IT IS SO ORDERED.**

Dated: December 9, 2022

_____
VINCE CHHABRIA
United States District Judge

---

[3] The parties should begin pondering whether the jury should be asked to make a special finding about whether Stemcell committed fraud in connection with these claims.

[4] As the trade secrets claim is going to trial, StemExpress's motion for relief is denied as to Interrogatory 4. Dkt. No. 154.